Larry W. Lee (State Bar No. 228175)
lwlee@diversitylaw.com
Max W. Gavron (State Bar No. 291697)
mgavron@diversitylaw.com
**DIVERSITY LAW GROUP, P.C.**
515 S. Figueroa Street, Suite 1250
Los Angeles, CA 90071
(213) 488-6555
(213) 488-6554 facsimile

William L. Marder, Esq. (State Bar No. 170131)
**Polaris Law Group**
501 San Benito Street, Suite 200
Hollister, CA 95023
Tel: (831) 531-4214
Fax: (831) 634-0333
Email: bill@polarislawgroup.com

Attorneys for Plaintiff and the Class

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHARLETTE VILLATORO, as an individual and on behalf of all others similarly situated,<br><br>                 Plaintiffs,<br><br>    vs.<br><br>WALTERS & WOLF INTERIORS, a California corporation; WALTERS & WOLF CONSTRUCTION SPECIALTIES, INC., an Arizona corporation; WALTERS & WOLF GLASS COMPANY, a California corporation; WALTERS & WOLF PRECAST, a California corporation; and DOES 1 through 50, inclusive,<br><br>                 Defendants. | Case No.: 20-CV-00609-KAW<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:         December 16, 2021<br>Time:        1:30 P.M.<br>Courtroom:  TBD<br>Judge:      Hon. Kandis A. Westmore |

1

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on December 16, 2021, at 1:30 p.m., or as soon thereafter as counsel may be heard, in Courtroom TBD of the United States District Court for the Northern District of California, Oakland Courthouse, located at 1301 Clay Street, Oakland, California 94612, before the Honorable Kandis A. Westmore, Plaintiff Sharlette Villatoro ("Plaintiff") will and hereby does move the Court for an Order (1) granting final approval of the proposed class action settlement; and (2) approving Class Counsel's application for attorneys' fees in the amount of $483,333.33 (one-third of the Class Settlement Amount) and reimbursement of costs in the amount of $10,402.15.

Given that this is a Motion for Final Approval of a settlement reached with Defendants Walters & Wolf Interiors, Walters & Wolf Construction Specialties, Inc., Walters & Wolf Glass Company, and Walters & Wolf Precast (collectively, "Defendants" or "Walters & Wolf"), Plaintiff has been informed that Defendants will not oppose this Motion.

This Motion is based upon this Notice, the attached Memorandum of Points and Authorities, the accompanying Declarations of Larry W. Lee, Max W. Gavron, William L. Marder, Plaintiff Sharlette Villatoro, and Elizabeth Kruckenberg of Phoenix Settlement Administrators, any oral argument of counsel, the complete files and records in the above-captioned matter, and such additional matters as the Court may consider.


DATED:  November 10, 2021                    DIVERSITY LAW GROUP, P.C.

                                             By:    /s/ Max W. Gavron
                                                  Larry W. Lee
                                                  Max W. Gavron
                                             Attorneys for Plaintiff and the Class

1

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION .................................................................. 8

II.     THE SETTLEMENT PROCESS HAS BEEN DUTIFULLY ADHERED TO AND
SUCCESSFULLY CARRIED OUT ...................................................... 9

   A.      Dissemination of Notice ................................................ 9

   B.      CAFA Notice ................................................................ 9

III.    OVERVIEW OF ISSUES AND ARGUMENT ........................ 9

IV.     LITIGATION HISTORY .................................................... 10

V.      THE SETTLEMENT ......................................................... 11

VI.     THE SETTLEMENT EXCEEDS THE STANDARDS FOR FINAL APPROVAL
12

   A.      The Strength of Plaintiff's Case Supports Settlement ................................. 13

   B.      Risks, Expense, and Duration of Continued Litigation Support Settlement ......... 13

   C.      The Settlement Amount Favors Settlement ................................. 14

   D.      The Extent of Investigation Favors Settlement .............................. 14

   E.      The Recommendations of Counsel Favor Approval of the Settlement .............. 15

   F.      The Class Has Responded Favorably to the Proposed Settlement ................. 15

   G.      The Procedure Through Which the Settlement Was Achieved Supports Final
Approval ............................................................................. 16

VII.    THE REQUESTED ATTORNEYS' FEES AND COSTS SHOULD BE
APPROVED ................................................................................ 17

   A.      The Percentage Awarded Should Mimic the Market ............................. 21

   B.      The Lodestar Calculation "Cross-Check" ................................. 24

     1.      Plaintiff's Counsel's Lodestar is Reasonable ................................. 25

   C.      The Court Should Approve the Request for Reimbursement of Costs ............... 26

VIII.   THE ADMINISTRATOR'S COSTS SHOULD BE APPROVED ...................... 26

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT**

IX.    NOTICE TO THE LWDA ........................................................................................... 26

X.    CONCLUSION ....................................................................................................... 26

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

1

## TABLE OF AUTHORITIES

2
**Page(s)**

3 **Other Authorities**

4 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11.45 (4th ed. 2002)............ 14

5 *4 Newberg on Class Actions* § 11.24 (4th Ed. & Supp. 2002)........................................... 17

6 *Manual for Complex Litigation* (Fourth) § 21.6 (2004) ................................................ 16

7 *Manual for Complex Litigation, Fourth* § 30.42 ...................................................... 17

8 *Newberg on Class Actions,* Fourth Edition, vol. 4, p. 560, § 14.6......................................... 19, 21

9 **Federal Cases**

10 *Armstrong v. Board of Sch. Dirs.*, 616 F.2d 305, 325 (7th Cir. 1980)......................................... 15

11 *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ........................................................ 18

12 *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)........................................................ 18, 19

13 *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979)................................................ 15

14 *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 773 (11th Cir. 1991)...................... 18, 22

15 *Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116, 128 (1885) ............................................ 18

16 *Chambers v. Whirlpool Corp.*, No. CV111733FMOJCGX, 2016 WL 5922456, at *10 (C.D. Cal.

17 Oct. 11, 2016) ............................................................................. 19

18 *Chavez v. Converse, Inc.*, No. 15-CV-03746-NC, 2020 WL 10575028, at *6 (N.D. Cal. Nov. 25,

19 2020)................................................................................... 19, 21

20 *Chun–Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010) ..... 13, 14, 15, 16

21 *Churchill Vill. LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir .2004)........................................ 16

22 *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) ........................................... 13

23 *Dyer v. Wells Fargo Bank, N.A.*, 2014 WL 5369395, at *3 (N.D. Cal. Oct. 22, 2014).... 13, 15, 16

24 *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) .................................... 15

25 *Emmons v. Quest Diagnostics Clinical Labs., Inc.*, No. 113CV00474DADBAM, 2017 WL

26 749018, at *7 (E.D. Cal. Feb. 27, 2017) ................................................... 21

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT**

*Farmers Ins. Exch. v. Law Offices of Conrado Joe Sayas, Jr.*, 250 F.3d 1234, 1236 (9th Cir. 2001) ................................................................................................................................. 19

*Florida v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990) .............................................................. 18

*Glass v. UBS Financial Services, Inc.*, 2007 WL 474936, at *16 (N.D. Cal. Jan 26, 2007) ....... 18

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ..................................... 12, 13

*In re Activision Sec. Litig.,* 723 F. Supp. 1373, 1378 (N.D. Cal. 1989) ................................... 19

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) ...................................... 15

*In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) .......................... 16

*In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378-79 (9th Cir. 1995) ......................................... 18

*In re Prudential Ins. Co. of America Sales Practice Litigation*, 106 F. Supp. 2d 721 (D.N.J. 2000) ................................................................................................................................. 24

*Internal Improvement Fund Trs. v. Greenough*, 105 U.S. 527, 532 (1881) ............................. 18

*Joel A. v. Giuliani*, 218 F.3d 132, 138 (2nd Cir. 2000) ......................................................... 12

*Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988) ............................................... 15

*Lao v. H&M Hennes & Mauritz*, N.D. Cal. Case No. 16-cv-00333-EJD (Dkt. No. 166) ........... 21

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ................................. 17

*Magadia v. Wal-Mart Assocs., Inc.*, 384 F. Supp. 3d 1058 (N.D. Cal. 2019) ........................... 23

*Magadia v. Wal-Mart Assocs., Inc.*, 999 F.3d 668 (9th Cir. 2021) ......................................... 24

*Mangold v. Cal. Public Utils. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995) .......................... 19

*Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375 (1970) .................................................................. 18

*Moore v. Verizon Commc'ns Inc.*, 2013 WL 4610764, at *5 (N.D. Cal. Aug. 28, 2013) ........... 13

*Officers for Justice v. Civil Service Comm'n of City and. County of San Francisco*, 688 F.2d 615, 625 (9th. Cir. 1982) ......................................................................................................... 16, 17

*Pallas v. Pacific Bell*, 1999 WL 1209495, at *6 (N.D. Cal. July 13, 1999) ............................. 16

*Ramirez v. Walgreen*, N.D. Cal. Case No. 18-cv-03921-EJD (Dkt. No. 34) ............................ 21

*Reed v. General Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983) ......................................... 15

*Reilly v. Recreational Equipment, Inc.*, N.D. Cal. 3:18-cv-07385-LB ...................................... 21

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT

*Rodriguez v. Nike Retail Servs., Inc*., 928 F.3d 810, 818 (9th Cir. 2019).....................................23

*Rodriguez v. West Publishing Corp*., 563 F.3d 948 (9th Cir. 2009).......................................16, 17

*Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 165 n.2 (1939) ...........................................18

*Stetson v. West Publishing Corp*., Case No. 13-57061, at *11 (9th Cir. May 11, 2016)..............19

*Villalpando v. Exel Direct Inc*., No. 3:12-CV-04137-JCS, 2016 WL 7740854, at *2 (N.D. Cal.

Dec. 12, 2016)....................................................................................................21

*Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1047 (9th Cir. 2002)...................................19, 20, 25

*Williams v. MGM-Pathe Communications Co*., 129 F.3d 1026, 1027 (9th Cir.1997) ................18

*Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983) ...........................................15, 17

*Zepeda v. Ulta Salon, Cosmetics & Fragrance, Inc*., E.D. Cal. Case No. 1:17-cv-00853-DAD-

EPG (Dkt. No. 55) ...............................................................................................21

**State Cases**

*Ketchum vs. Moses*, 24 Cal. 4th 1122, 1133 (2001) .......................................................26

*Laffitte v. Robert Half Int'l*, 1 Cal. 5th 480, 503 (2016)....................................................20

*Laffitte v. Robert Half Int'l., Inc*. (2014) 231 Cal. App. 4th 860, 871 .................................20, 21

*Vo v. Las Virgenes Municipal Water Dist*., 79 Cal. App. 4th 440, 447 (2000) ..........................26

**Statutes**

Labor Code § 226.................................................................................................10

Labor Code § 226(a) .......................................................................................9, 10

Labor Code § 226(e) ..............................................................................................10

Labor Code § 2698................................................................................................10

**Federal Codes**

Class Action Fairness Act of 2005.........................................................................9, 10

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT**

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

By this motion, Plaintiff Sharlette Villatoro ("Plaintiff") seeks final approval of a substantial class-wide settlement reached between Plaintiff and Defendants Walters & Wolf Interiors, Walters & Wolf Construction Specialties, Inc., Walters & Wolf Glass Company, and Walters & Wolf Precast (collectively, "Defendants" or "Walters & Wolf") (Plaintiff and Defendants together referred to as the "Parties").  Plaintiff also seeks an order approving Class Counsel's application for attorneys' fees in the amount of $483,333.33 (one third of the class settlement amount of $1,450,000.00 ("Class Settlement Amount")) and reimbursement of litigation costs in the amount of $10,402.15.  This request was set forth in the Notice of Class Action Settlement ("Notice Packet") mailed to all Class Members. Moreover, the settlement documents, including the Settlement Agreement, were uploaded and made available to putative class members on the Claims Administrator's website.  As set forth in the Joint Stipulation of Class Action Settlement ("Settlement Agreement") between the Parties, Defendant has agreed to not object to the requests sought herein.

On August 19, 2021, the Court entered an Order Granting Plaintiff's Motion for Preliminary Approval of Class Settlement (Dkt. No. 47) ("Preliminary Approval Order").  The Parties now seek this Court's final approval of the settlement.

The settlement requires Defendant to pay a total of One Million Four Hundred Fifty Thousand Dollars ($1,450,000.00), a sum which represents a substantial recovery for the members of the Class.  **Again, this settlement is non-reversionary, such that no monies will revert back to Defendant.**  (Settlement Agreement ¶¶ 9, 16, 52.)  As such, there was no claims process involved.  Class Members were given an opportunity to object or opt-out of the settlement.  To date, there have been two (2) opt outs and zero (0) objections to the settlement. (Declaration of Elizabeth Kruckenberg ("Kruckenberg Decl.") ¶¶ 8-9.)  Accordingly, this shows that the overwhelming majority of Class Members have reacted favorably to the settlement as there is a **99.9% participation rate and not a single objection from the 1,473 member class**. Moreover, all of the Court's orders concerning dissemination of the Notice Packet have been

8

followed.

Based thereon, Plaintiff respectfully requests that final approval be granted in its entirety.

## II. THE SETTLEMENT PROCESS HAS BEEN DUTIFULLY ADHERED TO AND SUCCESSFULLY CARRIED OUT

### A. Dissemination of Notice

As noted above, preliminary approval was granted on August 19, 2021. At that time, Phoenix Settlement Administrators ("Claims Administrator") was appointed by the Court as the Claims Administrator. The Parties, through the work of the Claims Administrator, have complied with this Court's orders concerning dissemination of the class notice. (Kruckenberg Decl. ¶¶ 2–7, 14.)

The notice was mailed to the class of 1,473 individuals utilizing the data provided by Defendant. (Kruckenberg Decl. ¶¶ 3, 5.) Of those, 50 notices were returned with an invalid address. (Kruckenberg Decl. ¶ 6.) Out of these, 3 were mailed to a forwarding address and 34 were mailed to updated addresses after performing a skip-trace. (*Id.*) As of the date of the filing of this Motion, thirteen (13) Notice Packets are considered undeliverable. (*Id.* ¶ 7.) Specifically, thirteen (13) Notice Packets were undeliverable since an updated address could not be obtained. (*Id.*)

### B. CAFA Notice

Pursuant to the Class Action Fairness Act of 2005 (the "CAFA"), Defendants will provide notice of the proposed settlement to the appropriate agencies.

## III. OVERVIEW OF ISSUES AND ARGUMENT

As discussed in detail in the previously filed Motion for Preliminary Approval (Dkt. No. 42), the class claim at issue in this lawsuit arises out of Defendants' issuance of itemized wage statements (*i.e.*, pay stubs), which every employer is required to do in California pursuant to Labor Code § 226(a). Plaintiff alleges that as a matter of corporate policy, practice and procedure, each and every wage statement issued by Defendants to the Class Members did not identify all applicable hourly rates of pay and the payroll period start date in violation of Labor Code § 226(a). As a result of such violations, Plaintiff alleged that Defendants are liable for

9

penalties pursuant to Labor Code § 226(e) and Labor Code § 2698, *et seq*.

Defendants, however, disagree with Plaintiff's contentions and believe that Plaintiff's claims are without merit. Defendants contend that the wage statements comply with the requirements of Labor Code § 226 and that Plaintiff suffered no injury as a result of any alleged noncompliance.

Further, to the extent that any appeals would have to be taken, Plaintiff and the Class would not have received any compensation from this case until such appeals were exhausted and assuming that the appeal was decided in Plaintiff's favor. Therefore, Plaintiff and the Class would have faced substantial risk in proceeding with the litigation had a settlement not been reached.

The negotiations were hard fought and contentious. As a result thereof, the Parties have reached the current settlement, which provides for a total settlement sum of One Million Four Hundred Fifty Thousand Dollars ($1,450,000.00), inclusive of payments to settlement class members, attorneys' fees and costs, payment to the State of California Labor & Workforce Development Agency ("LWDA"), and claims administration costs.

## IV.    LITIGATION HISTORY

On December 16, 2019, Plaintiff filed a class and representative action complaint against Defendants in the Alameda County Superior Court, alleging the following causes of action: (1) violation of California Labor Code § 226(a) for failure to provide accurate wage statements; and (2) violation of the Private Attorneys General Act ("PAGA"), Labor Code § 2698, *et seq*., based on the underlying Labor Code § 226(a) violation.

On January 27, 2020, Defendants filed a Notice of Removal of Civil Action to the United States District Court for the Northern District of California pursuant to the Class Action Fairness Act of 2005. (Dkt. No. 1.)

Plaintiff subsequently filed a First Amended Complaint on February 21, 2020, adding claims regarding Defendants' alter ego and agency liability. (Dkt. No. 15.)

With respect to investigation and discovery, Plaintiff conducted extensive investigation of the facts surrounding the claims in this action before filing suit, as well as during the course of

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

litigating and prosecuting this case. (Declaration of Larry W. Lee ("Lee Decl.") ¶¶ 3.) The Parties served their Initial Disclosures and propounded and responded to written discovery, including interrogatories and requests for production of documents. (*Id*. ¶ 3.) Plaintiff investigated the relationship between the Defendant entities and participated in significant motion practice. (*Id*. ¶ 3.) In connection with mediation, Plaintiff also obtained and reviewed information regarding the number of employees in the putative class and the number of wage statements at issue. (*Id*. ¶ 3.)

On October 23, 2020, the Parties attended a mediation with respected mediator, Michael Loeb, Esq. While the matter did not immediately settle, the Parties continued to negotiate over the course of many months. (Lee Decl. ¶ 3.) As a result of subsequent arm's length negotiations following mediation, the Parties were able to reach a settlement of all terms. (*Id*.)

## V.    THE SETTLEMENT

The Settlement terms were summarized in detail in the Motion for Preliminary Approval, and Plaintiff respectfully incorporates those arguments herein so as to avoid unnecessary duplication. The specific terms of the settlement are set forth in the Settlement Agreement and the Preliminary Approval Order. (Dkt. Nos. 42-1 at Exhibit A and 47.) The principal terms are:

a.    The Settlement Class is defined as "All employees of Defendants in the State of California who were paid wages at any time during the Class Period (November 22, 2018 through January 15, 2020)."

b.    The Settlement Class is releasing:

> any and all claims, rights, demands, liabilities, and causes of action, whether known or unknown, arising from, or related to, the same set of operative facts as those set forth in the operative Complaint, including claims based on the following categories of allegations: All claims for violation of Labor Code § 226, and all applicable IWC Wage Orders for failure to provide proper wage statements, as well as any and all claims for penalties under the California Private Attorneys' General Act predicated on violations of Labor Code § 226, that accrued during the Class Period.

c.    Defendants will pay a total Class Settlement Amount of $1,450,000.00. This sum

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

1    includes payments made to the Participating Class Members, claims administration costs, award

2    of attorneys' fees and costs, and payment to the LWDA.

3            d.      The sum available for use as payments to Class Members after the claims

4    administration costs, award of attorneys' fees and costs, and payment to the LWDA shall be

5    referred to as the Net Settlement Amount.  Defendants agree that they shall pay the entirety

6    (100%) of the Net Settlement Amount.  **In other words, the settlement is non-reversionary,**

7    **meaning that no funds will revert to Defendants.**

8            e.      No claim forms were necessary for any Class Member to participate in the

9    settlement and receive their share of the settlement.  Thus, any Class Member who does not opt-

10    out in connection with this settlement will automatically receive his/her share of the settlement

11    proceeds.  On average, each Class Member will receive approximately a payment of $590.42.

12    (Kruckenberg Decl. ¶ 11.)  The highest individual settlement payment to be paid will be

13    approximately $1,099.49.  (*Id.*)

14            f.      Any remaining monies from uncashed checks will be paid to Legal Aid at Work,

15    as a *cy pres* beneficiary.

16            g.      All of this Court's orders in connection with the claims administration process

17    have been followed.  (*See generally* Kruckenberg Decl. filed herewith).

18            The settlement represents a compromise between the positions and evaluations of the two

19    sides to this controversy.  Clearly, there were significant disagreements between the Parties as to

20    the facts and the law.

21    **VI.**      **THE SETTLEMENT EXCEEDS THE STANDARDS FOR FINAL APPROVAL**

22            Federal Rule of Civil Procedure 23(e) provides that any compromise of a class action

23    must receive Court approval.  The court has broad discretion to grant such approval and should

24    do so where the proposed settlement is "fair, adequate, reasonable, and not a product of

25    collusion."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *Joel A. v. Giuliani*,

26    218 F.3d 132, 138 (2nd Cir. 2000).  In determining whether a proposed settlement should be

27    approved, the Ninth Circuit has a "strong judicial policy that favors settlement, particularly

28    where complex class action litigation is concerned."  *Class Plaintiffs v. Seattle*, 955 F.2d 1268,

1276 (9th Cir. 1992).

The fairness, reasonableness, and adequacy of any class action settlement depends on "the relative strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; ... and the reaction of class members to the proposed settlement." *Hanlon* 150 F.3d at 1026. Here, as set forth in the Motion for Preliminary Approval and discussed below, the factors for final approval of this settlement have been established.

### A. The Strength of Plaintiff's Case Supports Settlement

This factor is generally satisfied when plaintiffs must overcome barriers to make their case. *Chun–Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010). As noted above, while Plaintiff believes that the Class could be certified and that there is ample case law to support Plaintiff's contentions in this matter, there was no guarantee.

Therefore, this factor favors settlement. *See Dyer v. Wells Fargo Bank, N.A.*, 2014 WL 5369395, at *3 (N.D. Cal. Oct. 22, 2014) (factor favors final approval where "[p]laintiffs acknowledge that, if the settlement is not approved, they will encounter significant obstacles in establishing their claims"); *see also Moore v. Verizon Commc'ns Inc.*, 2013 WL 4610764, at *5 (N.D. Cal. Aug. 28, 2013) (finding that the relative strength of plaintiffs' case favored settlement because plaintiffs admitted they would face hurdles in proving liability and damages).

### B. Risks, Expense, and Duration of Continued Litigation Support Settlement

"Difficulties and risks in litigating weigh in favor of approving a class settlement." *Dyer*, 2014 WL 5369395, at *3 (citation omitted). In addition to the obstacles set forth above, even if Plaintiff had prevailed at trial, there was a likelihood that Defendants would have appealed the verdict. Thus, the risks, expense, and duration of continued litigation favor final approval of the settlement. *See Dyer*, 2014 WL 5369395, at *3 ("This factor supports final approval of this settlement because, without a settlement, Plaintiffs would risk recovering nothing after a lengthy and costly litigation.").

---

1

### C.    The Settlement Amount Favors Settlement

2
3    The standard of review for class settlements is whether the settlement is within a range of

3    reasonableness.  As Professor Newberg comments:  "Recognizing that there may always be a

4    difference of opinion as to the appropriate value of settlement, the courts have refused to

5    substitute their judgment for that of the proponents.  Instead the courts have reviewed settlements

6    with the intent of determining whether they are within a range of reasonableness.…"  4 Alba

7    Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11.45 (4th ed. 2002).  As detailed in

8    Plaintiff's Motion for Preliminary Approval, Supplemental Briefing submitted in support thereof,

9    and the Court's Order granting preliminary approval, the settlement is in the range of

10    reasonableness when compared to the potentially available penalties, risk in moving forward

11    with litigation, and the possibility of appeals.  *See* Dkt. Nos. 42, 45, 47.

12    The settlement fund is non-reversionary, such that 100% of the Net Settlement Amount

13    will be available for distribution to Class Members who do not opt-out.  Moreover, the

14    settlement did not require claim forms.  Rather, Class Members who did not opt-out will receive

15    a check.  Further, the settlement fund will be paid out entirely in cash (as opposed to a voucher,

16    coupon, etc.).  In addition, as set forth in the Settlement Agreement, the class release is expressly

17    limited to the class and representative claims asserted in this case.

18    Moreover, courts have acknowledged that, even if the court has concerns about the class

19    recovery, the lack of objection to the recovery by the class weighs in favor of finding that the

20    settlement amount is fair and reasonable.  *See Chun-Hoon*, 716 F. Supp. 2d at 851.  In *Chun-*

21    *Hoon*, although the court had concerns about the adequacy of the settlement during preliminary

22    certification, the lack of objection to the settlement aided the court in determining that the

23    settlement was beneficial to the class.  *Id.*  Here, not a single objection was filed.

24

### D.    The Extent of Investigation Favors Settlement

25    Here, settlement was reached following years of litigation and motion practice, including

26    the exchange of Initial Disclosures and written discovery.  Counsel for the Parties also engaged

27    in a meet and confer process regarding the data necessary to perform a damage analysis and

28    engage in a meaningful mediation.  (Lee Decl. ¶ 4.)  In connection with the mediation,

14

1    Defendants provided certain class payroll data for Plaintiff to review and analyze.  (*Id.*)

2          Courts have held that such discovery is sufficient for parties to make an informed

3    decision regarding the adequacy of the settlement.  *See*, *e.g.*, *Dyer*, 2014 WL 5369395, at *3

4    (parties' participation in written discovery, depositions, witness interviews, and formal mediation

5    favors an informed settlement); *Chun-Hoon*, 716 F. Supp. 2d at 848 ("true value of the class

6    claims is well-known and class counsel possess a sufficient understanding of the issues involved

7    and the strengths and weaknesses of the case"); *see also In re Mego Fin. Corp. Sec. Litig.*, 213

8    F.3d 454, 459 (9th Cir. 2000) (formal discovery not necessary where the parties have sufficient

9    information to make an informed decision about settlement).

10          **E.      The Recommendations of Counsel Favor Approval of the Settlement**

11          The recommendations of experienced counsel should be given considerable weight.

12   *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979); *Ellis v. Naval Air Rework*

13   *Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980),  ("[T]he fact that experienced counsel involved in

14   the case approved the settlement after hard-fought negotiations is entitled to considerable

15   weight."); *Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988); *Reed v. General Motors*

16   *Corp.*, 703 F.2d 170, 175 (5th Cir. 1983); *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir.

17   1983), *Armstrong v. Board of Sch. Dirs.*, 616 F.2d 305, 325 (7th Cir. 1980).

18          Lead counsel for Plaintiff has broad experience litigating employment class actions.  (Lee

19   Decl. ¶¶ 9-13; Declaration of Max W. Gavron ("Gavron Decl.") ¶¶ 3-8; Declaration of William

20   L. Marder ("Marder Decl.") ¶¶ 7-14.)  They support this settlement as a fair and reasonable

21   settlement which is in the best interest of the settlement class.  (Lee Decl. ¶ 5; Gavron Decl. ¶ 2;

22   Marder Decl. ¶ 4.)  Therefore, this factor favors approval of the settlement.  *See Dyer*, 2014 WL

23   5369395, at *3 (recommendation of plaintiffs' counsel supports approval of settlement); *Chun-*

24   *Hoon*, 716 F. Supp. 2d at 848 (same).  Plaintiff also supports the settlement.  (*See generally*

25   Declaration of Sharlette Villatoro).

26          **F.      The Class Has Responded Favorably to the Proposed Settlement**

27           "[T]he absence of a large number of objections to a proposed class action settlement

28   raises a strong presumption that" the settlement is favorable to class members.  *In re Omnivision*

15

1    *Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008), *see Pallas v. Pacific Bell*, 1999 WL

2    1209495, at *6 (N.D. Cal. July 13, 1999) ("The greater the number of objectors, the heavier the

3    burden on the proponents of settlement to prove fairness.").

4          Here, **not a single class member out of 1,473 individuals has objected** to this

5    settlement and **only two class members have opted out**.  (Kruckenberg Decl. ¶¶ 8-9.)  In other

6    words, this settlement has a 99.9% participation rate.  Thus, the absence of any objections or opt-

7    outs strongly support the fairness of the settlement.  *See Churchill Vill. LLC v. Gen. Elec.*, 361

8    F.3d 566, 577 (9th Cir .2004) (approving settlement with 45 objections and 500 opt-outs from a

9    90,000-person class, representing .05% and .56% of the class, respectively); *Dyer*, 2014 WL

10   5369395, at *4 (strong support from class in favor of approving settlement where only three of

11   8,695 class members opted out); *Chun–Hoon*, 716 F. Supp. 2d at 852 (where 16 of 329 class

12   members opted out, court found that positive class reaction "strongly supports settlement").

13         **G.    The Procedure Through Which the Settlement Was Achieved Supports Final**

14              **Approval**

15         The Ninth Circuit has recognized that the factors to be examined at final approval may

16   differ depending on the circumstance of each case.  *Officers for Justice*, 688 F.2d at 625.  The

17   procedures by which the settlement was achieved also strongly support the fairness of the

18   settlement.  *See Chun-Hoon*, 716 F. Supp. 2d at 851 ("To these factors, the court adds as a ninth

19   factor to consider the procedure by which the settlement was arrived at"), citing *Manual for*

20   *Complex Litigation* (Fourth) § 21.6 (2004).  As noted above, the parties participated in arm's

21   length negotiations, including a full day of a mediation before Michael Loeb, Esq. and

22   subsequent negotiations in the weeks and months following the initially unsuccessful mediation.

23   This weighs in favor of approval of the settlement.  *See Chun-Hoon*, 716 F. Supp. 2d at 851

24   (finding that use of formal arm's-length mediation supported approval of settlement agreement).

25         Further, the Ninth Circuit has shown longstanding support of settlements reached through

26   arm's length negotiation by capable opponents.  In *Rodriguez v. West Publishing Corp.*, 563 F.3d

27   948 (9th Cir. 2009), the Ninth circuit expressly opined that courts should defer to the "private

28   consensual decision of the [settling] parties." *Id*. at 965, citing *Hanlon*, 150 F.3d at 1027.  The

primary reason for deferring to such settlements is the experience of counsel and the participation of a neutral, both of which factors are present here.

The Court in *Rodriguez* found that the settling parties "put a good deal of stock in the product of an arms' length, non-collusive, negotiated resolution, and have never prescribed a particular formula by which that outcome must be tested." *Rodriguez*, 563 F.3d at 965 (citations omitted). As the Court explained, "[i]n reality, parties, counsel, mediators, and district judges naturally arrive at a reasonable range for settlements by considering the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it, discounted to present value." *Id*. at 965 (citations omitted). *See also Williams v. Vukovich*, 720 F.2d 909, 922-923 (6th Cir.1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs"); *4 Newberg on Class Actions* § 11.24 (4th Ed. & Supp. 2002); *Manual for Complex Litigation, Fourth* § 30.42).

The proposed settlement has no deficiencies. There is no standard or benchmark for determining whether any given settlement is fair. "Ultimately the district court's determination is nothing more than 'an amalgam of delicate balancing, gross approximations and rough justice.'" *Officers for Justice v. Civil Service Comm'n of City and. County of San Francisco*, 688 F.2d 615, 625 (9th. Cir. 1982) (citation omitted). In making its determination, the Court should weigh the benefits that the settlement will realize for the class against the uncertainty of litigation and the possibility that the class members would obtain no relief in the absence of a settlement. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements").

The settlement has been reached after considerable investigation, litigation, negotiation, and involving the mediation efforts of a highly experienced mediator. Each side evaluated the strengths and weaknesses of their case and independently came to the conclusion that this settlement represents a responsible means of addressing the claims of Plaintiff and the Class, as well as Defendants' contention that they would prevail on the merits.

## VII.   THE REQUESTED ATTORNEYS' FEES AND COSTS SHOULD BE APPROVED

Governing Ninth Circuit law, following the clear instruction of the United States Supreme Court in *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980), establishes that percentage awards are to measure against the entire common fund created in the settlement.  In *Glass v. UBS Financial Services, Inc.*, 2007 WL 474936, at *16 (N.D. Cal. Jan 26, 2007), citing to the Ninth Circuit authority, the Court noted:

> The Ninth Circuit has held, however, that the district court must award fees as a percentage of the entire fund, or pursuant to the lodestar method, not on the basis of the amount of the fund actually claimed by the class.

*See also Williams v. MGM-Pathe Communications Co*., 129 F.3d 1026, 1027 (9th Cir.1997).

Moreover, the U.S. Supreme Court consistently has recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Mills v. Elec. Auto-Lite Co*., 396 U.S. 375 (1970). The purpose of this doctrine is largely to avoid unjust enrichment, by spreading the litigation costs proportionally among all the beneficiaries so that the active beneficiary does not bear the entire burden alone.  It provides that when a litigant's efforts create or preserve a fund from which others derive benefits, the litigant may require the passive beneficiaries to compensate those who created the fund.

Every United States Supreme Court case that has considered the award of attorney's fees under the common fund doctrine has determined those fees as a percentage of the recovery.  *See, e.g.*, *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 773 (11th Cir. 1991) (citing *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984)) (noting that the percentage of recovery method is the appropriate method to award attorney's fees in common fund cases); *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 165 n.2 (1939); *Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116, 128 (1885); *Internal Improvement Fund Trs. v. Greenough*, 105 U.S. 527, 532 (1881).

The Ninth Circuit has also recognized a "ground swell of support for mandating a percentage-of-the-fund approach in common fund cases." *Florida v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990); *see also In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378-79 (9th Cir. 1995) (affirming attorney's fee of 33% of the recovery).  Although the Ninth Circuit has typically

18

1    found that 25% of the common fund is "benchmark," numerous courts in the Ninth Circuit have

2    awarded higher amounts.  *See Stetson v. West Publishing Corp.*, Case No. 13-57061, at *11

3    (9th Cir. May 11, 2016).  The twenty-five percent benchmark may be adjusted upward or

4    downward depending on the circumstances presented by the particular case.  Indeed, the Ninth

5    Circuit and district courts therein have routinely permitted recovery in the amount of 33.33%,

6    40% and even up to 50% of the common fund.  *See, e.g.*, *In re Activision Sec. Litig.*, 723 F.

7    Supp. 1373, 1378 (N.D. Cal. 1989) (listing Ninth Circuit cases); *Chavez v. Converse, Inc.*, No.

8    15-CV-03746-NC, 2020 WL 10575028, at *6 (N.D. Cal. Nov. 25, 2020) (awarding 1/3 of

9    common fund and detailing factors supporting such an award).

10        Seeking a fee based on a percentage of the gross recovery, which is what Class Counsel

11    is seeking here, is appropriate and even desirable in cases like this.  *See Newberg on Class*

12    *Actions,* Fourth Edition, vol. 4, p. 560, § 14.6 (noting that percentage of the fund awards are

13    preferable because they align the interests of the attorney with the client, as the attorney is not

14    incentivized to bill unnecessary hours to generate a greater fee); *Boeing*, 444 U.S. at 478.  Unlike

15    the lodestar method which can encourage class counsel to devote unnecessary hours to generate a

16    substantial fee, under the POR [percentage of recovery] method, the more the attorney succeeds

17    in recovering money for the client, and the fewer legal hours expended to reach that result, the

18    higher dollar amount of fees the lawyer earns.  Thus, one of the primary advantages of the POR

19    method is that it is thought to equate the interests of class counsel with those of the class

20    members and encourage class counsel to prosecute the case in an efficient manner.

21        As reiterated by the Ninth Circuit, courts are obligated to apply California law in diversity

22    jurisdiction cases in awarding attorneys' fees.  *Farmers Ins. Exch. v. Law Offices of Conrado Joe*

23    *Sayas, Jr.*, 250 F.3d 1234, 1236 (9th Cir. 2001) ("Because this case is based on diversity

24    jurisdiction, we are obligated to apply California state law regarding attorneys' fees."); *Vizcaino*

25    *v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Mangold v. Cal. Public Utils. Comm'n*,

26    67 F.3d 1470, 1478 (9th Cir. 1995); *Chambers v. Whirlpool Corp.*, No. CV111733FMOJCGX,

27    2016 WL 5922456, at *10 (C.D. Cal. Oct. 11, 2016) ("[i]n diversity actions…the Ninth Circuit

28

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

**applies state law to determine the right to fees and the method for calculating fees**") (emphasis added).

As this case was removed to this Court pursuant to the CAFA, which is a form of diversity jurisdiction, Plaintiff respectfully submits that California law should govern this Court's analysis. The California Supreme Court clarified its stance on common fund cases, ruling –

> "We join the overwhelming majority of federal and state courts in holding that when class action litigation established a monetary fund for the benefit of the class members, and the trial court in its equitable powers awards class counsel a fee out of that fund, the court may determine the amount of a reasonable fee by choosing an appropriate percentage of the fund created."

*Laffitte v. Robert Half Int'l*, 1 Cal. 5th 480, 503 (2016). Explaining its ruling, the Court further held that "[t]he recognized advantages of the percentage method – including relative ease of calculation, alignment of incentives between counsel and the class, a better approximation of market conditions in a contingency case, and the encouragement it provides counsel to seek an early settlement and avoid unnecessarily prolonging litigation – convince us the percentage method is a valuable tool that should not be denied by our trial courts." *Id.* (internal citations omitted); *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047.

Based on this rationale, the California Supreme Court in *Laffite* affirmed a fee award representing one-third of the fund and rejected the objections of putative class members to this award. *Laffitte*, 1 Cal. 5th at 506. Further, this was based on a lodestar amount that required a multiplier of 2.13. *Id.* at 487. As the Court held, only when the multiplier is "extraordinarily high or low [should] the trial court [] consider whether the percentage method should be adjusted so as to bring the imputed multiplier within a justifiable range." *Id*. at 505. Moreover, in the *Laffitte* intermediate court decision, the court observed that "33 1/3 percent of the common fund is consistent with, and in the range of, awards in other class action lawsuits." *Laffitte v. Robert Half Int'l., Inc*. (2014) 231 Cal. App. 4th 860, 871.

Numerous district courts have followed *Laffitte* in awarding 1/3 of the common fund. Indeed, District Judge Edward Davila in *Ramirez v. Walgreen*, N.D. Cal. Case No. 18-cv-03921-

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

1   EJD (Dkt. No. 34) and *Lao v. H&M Hennes & Mauritz*, N.D. Cal. Case No. 16-cv-00333-EJD

2   (Dkt. No. 166), followed *Laffitte* in awarding Plaintiff's counsel (the same counsel as in the

3   instant case) 1/3 of the common fund of $1.15 million based on a multiplier of 1.32 and $3.8

4   million based on a negative multiplier, respectively.  Magistrate Judge Laurel Beeler in *Reilly v.*

5   *Recreational Equipment, Inc.*, N.D. Cal. 3:18-cv-07385-LB, also awarded Plaintiff's counsel 1/3

6   of the common fund of $5 million based on a multiplier of 2.7.  *See also Chavez*, 2020 WL

7   10575028, at *6 (awarding 1/3 of common fund).

8           Additionally, the Northern District Court in *Villalpando v. Exel Direct Inc*., No. 3:12-CV-

9   04137-JCS, 2016 WL 7740854, at *2 (N.D. Cal. Dec. 12, 2016), cited *Laffitte* when awarding

10  33% of the common fund:

11              Plaintiffs' fee request of $ 4,500,000 represents one-third of the
                Settlement Fund, which is reasonable under both applicable law,
12              and in light of the contingent risk, Counsel's documented lodestar,
                the complex and protracted nature of the case, and strong result for
13              the Class.

14  *Id*.

15          Further, the Eastern District Court in *Zepeda v. Ulta Salon, Cosmetics & Fragrance, Inc.*,

16  E.D. Cal. Case No. 1:17-cv-00853-DAD-EPG (Dkt. No. 55), followed *Laffitte*, in awarding 1/3 of

17  the common fund of $3.4 million, or $1,133,333.33 in attorneys' fees applying a multiplier of

18  1.328.  (Dkt. No. 55 at 12-14.)  In so holding, the Court reiterated that "[i]n a diversity action such

19  as this, federal courts apply state law both to determining the right to fees and the method of

20  calculating them."  *Id.; see also Emmons v. Quest Diagnostics Clinical Labs., Inc*., No.

21  113CV00474DADBAM, 2017 WL 749018, at *7 (E.D. Cal. Feb. 27, 2017) (following *Laffitte* in

22  awarding 33% of the common fund; "[t]he California Supreme Court recently held that the

23  percentage-of-fund method of calculating attorneys' fees survives in California courts").

24      **A.    The Percentage Awarded Should Mimic the Market**

25          *Newberg on Class Actions*, Fourth Edition, vol. 4, p. 560, § 14.6 contains an interesting

26  discussion of the concept of a marketplace analysis and why it is so valuable in determining a

27  percentage award:

28              [Goodrich and Silver]…suggest that fee awards should be

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT**

consistent with contingent fee arrangements negotiated in non-class litigation:

The percentage method is consistent with and is intended to mirror practice in the private marketplace where contingent fee attorneys typically negotiate percentage fee arrangements with their clients. As Judge Posner emphasized in *In re Continental Illinois Securities Litigation*s, "[t]he object in awarding a reasonable attorney's fee...is to simulate the market...The class counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client." In non-class litigations, one-third contingency fees are typical. In their concurring opinion in Blum, Justices Brennan and Marshall observed that "[i]n tort suits, an attorney might receive one-third of whatever the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery."

If named plaintiffs have agreed to pay a one-third contingent fee, that is powerful evidence of a reasonable fee. One of the best ways to demonstrate the value of counsel's work to the class is to review the consideration agreed to be paid by the named plaintiffs in their contracts. If the named plaintiffs have employed their counsel by contingent fee agreements that obligated them to pay one-third of the recovery, it would indeed be inequitable for the members of the class, who will enjoy the benefits of this settlement without incurring the risks of bringing the claim, to pay less than the named plaintiffs.

The complex and heavily litigated nature of this litigation, and its successful result led to the clear conclusion that the fee request herein is reasonable. In *Camden I Condominium Association, Inc., v. Dunkel*, 946 F. 2d 768 (11th Cir. 1991), the court identified various factors to be considered in arriving at a common fund fee determination. Each of the factors is now briefly addressed.

1. The time and labor required – this is overwhelmingly established in this motion, based upon the work involved, and the supporting attorney declarations and time charts submitted;

2. The novelty and difficulty of the questions involved – this case involved novel and difficult questions of evolving law, including application of the PAGA, which the Parties briefed and litigated;

3.      The skill requisite to perform the legal services properly – this goes hand in hand with the first and second factors.  Plaintiff's counsel was able to litigate this case effectively and ultimately achieved a very good result for the class because of Plaintiff's counsel's experience in litigating wage and hour cases;

4.      The preclusion of other employment by the attorney due to the acceptance of the case – the case required and demanded attorney time on both sides.  The result of this scheduling was that Class Counsel could have spent such time on numerous other matters while this litigation was ongoing.

5.      The customary fee – as discussed above, numerous courts have approved an award of 33.33% of the gross settlement fund, which is the standard percentage pursuant to California law;

6.      Whether the fee is fixed or contingent – this matter was clearly contingent without any sort of fixed or guaranteed fees for Class Counsel.  Indeed, Plaintiff's counsel's sole payment was based on contingency fee and no fixed guaranteed costs would have received unless Plaintiff's counsel were successful in this litigation;

7.      Time limitation imposed by the client or the circumstances – although the client did not impose any time limitations, Class Counsel invested a significant amount of time in this case;

8.      The amount involved and results obtained – this is discussed above;

9.      The experience, reputation, and ability of the attorney – as evidenced by the supporting declarations, Class Counsel has been designated and certified as class counsel in numerous other matters, including in the Northern District;

11.     Awards in similar cases – similar cases were identified in the section above.

Plaintiff's attorneys heavily and aggressively litigate numerous wage and hour class actions on behalf of workers throughout the State of California – all cases of which are on a contingency fee basis.  *See*, *e.g.*, *Rodriguez v. Nike Retail Servs., Inc.*, 928 F.3d 810, 818 (9th Cir. 2019); *Magadia v. Wal-Mart Assocs., Inc.*, 384 F. Supp. 3d 1058 (N.D. Cal. 2019).  For example, in *Magadia*, Plaintiff's counsel litigated that case for several years, including trying the

23

1  case to a successful $102 million judgment on behalf of the class.  Walmart successfully

2  appealed and Plaintiff's counsel have not been reimbursed for any attorneys' fees or costs.  *See*

3  *Magadia v. Wal-Mart Assocs., Inc.*, 999 F.3d 668 (9th Cir. 2021).  As such, employment class

4  actions present significant risks.  Nevertheless, Plaintiff's counsel zealously represent workers

5  notwithstanding the potential for losing cases, or not being reimbursed attorneys' fees and costs

6  for years of tireless litigation.

7       The fee sought relates to all efforts expended by Class Counsel for the complete handling

8  of the class/representative action, including any additional work remaining to be performed by

9  Class Counsel in securing final Court approval of the settlement, and later following through to

10  ensure that the settlement is fairly administered and fully implemented.

11       A significant amount of work on the part of Class Counsel went into achieving this

12  resolution.  Based upon the factors relating to approval of percentage of the fund fee awards,

13  class counsel submit that the effort and result justify the requested percentage fee requested.  As

14  a secondary "cross-check" to the percentage of the common fund award, Class Counsel are also

15  providing this Court with a time and task chart, which breaks down the tasks and time spent by

16  each firm, so that the Court can conduct a lodestar analysis.

17       Plaintiff's attorneys' time and task charts show in this case that Plaintiff's counsel

18  lodestar is $381,665.00, which results in a modest multiplier of 1.27 times.

19  **B.    The Lodestar Calculation "Cross-Check"**

20       It has been noted that it is sometimes helpful to courts to "cross-check" a percentage

21  award by employing a lodestar with a multiplier analysis.  While the lodestar method is generally

22  considered inappropriate in a common fund case where real cash benefits (as opposed to coupons

23  or non-monetary benefits) are made available to class members, its use can provide further

24  validation of the appropriateness of the percentage award approach.  *See In re Prudential Ins.*

25  *Co. of America Sales Practice Litigation*, 106 F. Supp. 2d 721 (D.N.J. 2000).  Such is the case

26  here.

27       The declarations of Class Counsel evidence the fact that they devoted approximately

28  575.7 hours of time to this litigation to date.  (Lee Decl. ¶ 14, Ex. A; Gavron Decl. ¶ 10, Ex. A;

24

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Marder Decl. ¶ 15, Ex. A.)  These hours are summarized in the time and task charts that are attached to Plaintiff's counsel's declarations.

In addition, as explained above, Class Counsel expect to expend an additional 15 hours through the final approval hearing, including on matters such as preparing the Motion for Final Approval, attending the final approval hearing, and further conferring with class members regarding the case status.  (Lee Decl. ¶ 15; Gavron Decl. ¶ 11.)  Thus, Class Counsel will have expended 590.7 hours through final approval.

Applying the various hourly rates of the law firms and lawyers who dedicated their efforts to this matter, a lodestar of $381,665.00 is established for the amount of work spent through final approval.  (Lee Decl. ¶ 16, Ex. A; Gavron Decl. ¶ 12, Ex. A; Marder Decl. ¶ 16, Ex. A.)  The percentage award sought by Class Counsel, if converted to the lodestar method, would entail a modest multiplier of approximately 1.27.  In the Ninth Circuit, positive multipliers "ranging from one to four are frequently awarded…when the lodestar method is applied." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 n. 6 (9th Cir. 2002) .  Thus, the fee application is supported whether by the cross-check lodestar/multiplier method discussed herein, or by the percentage of the common fund discussed in the preceding sections.

### 1.    Plaintiff's Counsel's Lodestar is Reasonable

The hourly rates employed by Class Counsel, as declared to in the attorney declarations, are reasonable.  Plaintiff's attorneys are entitled to the hourly rates charged by attorneys of comparable experience, reputation, and ability for similar litigation.  The background and experience of Plaintiff's counsel are fully set forth in the declarations filed in support of this motion.  The basic hourly rates listed for each firm are fair, and representative of the combination of years of experience and the clear successes they have had in the past in connection with class action litigation.  The time and task charts summarize the total hours devoted to the matter by the various law firms, along with the hourly rates as set forth in the supporting declarations, and the total billed.  (Lee Decl. ¶ 14, Ex. A; Gavron Decl. ¶ 10, Ex. A; Marder Decl.¶ 15, Ex. A.)

As discussed in their supporting declarations, Class Counsel are a group of well-

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

1  experienced litigators, including class action litigation.  (Lee Decl. ¶¶ 9-13; Gavron Decl. ¶¶ 3-8;
2  Marder Decl.¶¶ 7-14.)  Under California law, counsel are entitled to compensation for all hours
3  reasonably spent on the matter.  *Ketchum vs. Moses*, 24 Cal. 4th 1122, 1133 (2001).
4  Reasonableness of hours is assessed by "the entire course of the litigation, including pretrial
5  matters, settlement negotiations, discovery, litigation tactics, and the trial itself…." *Vo v. Las
6  Virgenes Municipal Water Dist*., 79 Cal. App. 4th 440, 447 (2000).  In addition, the attached
7  time and task charts clearly reflect the many hours which were necessarily spent on the case.

### C.    The Court Should Approve the Request for Reimbursement of Costs

9       The request for reimbursement of costs, in the amount of $10,402.15 is fair and
10 reasonable.  As stated above, the costs are all litigation related costs, which have been detailed in
11 the supporting declaration of Class Counsel.  (Lee Decl. ¶ 18, Ex. B.)  The authority for the
12 Court to award costs is the Parties' Settlement Agreement and Labor Code §§ 218.5, 226(e), and
13 2699(g)(1).  Further, pursuant to the Settlement Agreement, Defendants have agreed not to
14 oppose any request for reimbursement of costs up to $20,000.00; but the actual costs that are
15 being sought are much less than the amount allotted in the Settlement Agreement.  The
16 difference will revert to the Net Settlement Fund for distribution to the participating class
17 members.  Accordingly, the Court should award Plaintiff's counsel their costs.

### VIII.  THE ADMINISTRATOR'S COSTS SHOULD BE APPROVED

19      Here, Phoenix Settlement Administrators dutifully administered the settlement.  (*See
20 generally* Kruckenberg Decl.)  The Settlement Agreement provides up to $12,750 for Phoenix
21 Settlement Administrators' costs.  (Settlement Agreement ¶¶ 3, 30.)  As such, Plaintiff
22 respectfully requests that the Court award Phoenix its costs.

### IX.    NOTICE TO THE LWDA

24      Plaintiff provided notice of the proposed settlement to the Labor and Workforce
25 Development Agency ("LWDA") in conjunction with filing her Motion for Preliminary
26 Approval, and will do the same with respect to this Motion for Final Approval.  Gavron Decl.
27 ¶ 13.

### X.    CONCLUSION

26

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

1    Based on the foregoing, Plaintiff and Class Counsel respectfully request that this Motion

2  be granted in its entirety and grant Plaintiff's counsel's fee request of $483,333.33, costs

3  requested in the amount of $10,402.15, and claims administration costs of $12,750.00.  The

4  Parties have reached this settlement following extensive litigation, ongoing case discussions, and

5  arm's-length negotiations.  Plaintiff respectfully requests that the Court:

6    1.    Grant final approval of the proposed settlement;

7    2.    Order payment from the settlement proceeds to the Claims Administrator in

8  compliance with the Settlement Agreement;

9    3.    Order payment from the settlement proceeds to Class Counsel in compliance with

10  the Settlement Agreement;

11    4.    Order payment from the settlement proceeds to the LWDA in compliance with the

12  Settlement Agreement;

13    5.    Enter the proposed Final Approval Order and Judgment submitted herewith; and

14    6.    Retain continuing jurisdiction over the implementation, interpretation,

15  administration, and consummation of the settlement.

16

17  DATED:  November 10, 2021          DIVERSITY LAW GROUP, P.C.

18                                    By:    /s/ Max W. Gavron

19                                          Larry W. Lee
                                            Max W. Gavron
20                                    Attorneys for Plaintiff and the Class

21

22

23

24

25

26

27

28

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT**