UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHARLETTE VILLATORO,<br>Plaintiff,<br>v.<br>WALTERS & WOLF INTERIORS, et al.,<br>Defendants. | Case No. 4:20-cv-00609-KAW<br><br>**ORDER GRANTING FINAL APPROVAL; ORDER GRANTING MOTION FOR ATTORNEYS' FEES**<br><br>Re: Dkt. No. 48 |

On December 16, 2019, Plaintiff Sharlette Villatoro filed a putative class action against Defendants Walters & Wolf Interiors, Walters & Wolf Construction Specialties, Inc., Walters & Wolf Glass Company, and Walters & Wolf Precast alleging violations of two California labor laws. The parties settled and, on August 19, 2021, the Court granted preliminarily approval.

On November 10, 2021, Plaintiff filed a motion for final approval of the settlement. (Pl.'s Mot., Dkt. No. 48.) No opposition was filed.

On March 3, 2022, the Court held a hearing, and, upon consideration of the parties' filings and the arguments presented, for the reasons set forth below, Plaintiff's motion for final approval is GRANTED.

## I. BACKGROUND

### A. Factual Background

On December 16, 2019, Plaintiff Sharlette Villatoro filed a class action complaint against Defendants Walters & Wolf Interiors, Walters & Wolf Construction Specialties, Inc., Walters & Wolf Glass Company, and Walters & Wolf Precast alleging two violations of California Labor Code § 226 for not providing accurate, itemized wage statements to Plaintiff and other non-exempt employees and for failing to provide the pay period dates on the wage statements. The

case was removed to federal court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d).

Plaintiff began working for Defendants on or around October 10, 2016, and she currently works as a project administrative assistant, which is a non-exempt, hourly position. (*See* First Am. Compl., "FAC," Dkt. No. 15 ¶ 17.) Plaintiff's wage statements identify "Walters & Wolf" and "Walters & Wolf INTERIORS" as her employer. Plaintiff alleges that the defendants are alter egos of each other, as they hold themselves out as a single company, and share the same corporate officers, corporate location, website, and agent for service of process. (FAC ¶¶ 19-30.)

On February 21, 2020, Plaintiff filed her first amended complaint. The parties settled the lawsuit, and, on August 19, 2021, the Court preliminarily approved the proposed settlement and directed that notice be sent to the class members. (Preliminary Approval Order, Dkt. No. 47.)

On November 10, 2021, Plaintiff filed the instant motion for final approval. (Pl.'s Mot., Dkt. No. 48.) On November 18, 2021, the parties filed a stipulation in support of the motion for final approval of the class action settlement and requested that the Court defer entry of judgment to accommodate the CAFA notice period. (Dkt. No. 50 at 2.) Instead, the undersigned continued the hearing on the motion for final approval to March 3, 2022, which is after the conclusion of the CAFA notice period. (Dkt. No. 51.)

### B. Settlement Agreement

The settlement agreement ("Settlement") defines the Class Members as "all employees of Defendants in the State of California who were paid wages at any time during the Class Period," which was from November 22, 2018 through January 15, 2020. (Settlement Agreement, Dkt. No. 42-1 ¶¶ 7-8.) The putative class has 1,424 members. *Id.* at ¶ 7.

Under the terms of the Settlement, Defendants agree to pay a "Class Settlement Amount" of $1,450,000. (Settlement Agreement ¶ 9.) Of the Class Settlement Amount, Plaintiff's counsel seeks an attorney's fee award of 33.3%, or $483,333.33, costs not to exceed $20,000, and settlement administration costs of $15,000. (Settlement Agreement ¶¶ 29-30.) The Class Settlement Amount also includes $100,000 in penalties under California's Private Attorneys General Act ("PAGA"); $75,000 shall be paid to the California Labor and Workforce Development Agency ("LWDA") and $25,000 will be part of the Net Settlement Amount for

distribution to participating class members. (Settlement Agreement ¶ 32.) This leaves a Net Settlement Amount of $868,514.52. (Decl. of Elizabeth Kruckenberg, "Kruckenberg Decl.," Dkt. No. 48-4 ¶ 11.)

Settlement payments are calculated by: (1) dividing the Net Settlement Amount by the total wage statements by all participating class members during the class period, and (2) multiplying the result by each individual's total number of wage statements during the class period. (Settlement Agreement ¶ 36.) There were no more than 58,982 wage statements issued to the putative Class Members during the Class period. (Settlement Agreement ¶ 35.)

The claims being released by the Settlement are limited to the "All claims for violation of Labor Code § 226, and all applicable IWC Wage Orders for failure to provide proper wage statements, as well as any and all claims for penalties under the California Private Attorneys' General Act predicated on violations of Labor Code § 226, that accrued during the Class Period." (Settlement Agreement ¶ 23.) No claim forms were necessary for any Class Member to participate in the settlement, but any Class Member could opt-out. (Settlement Agreement ¶¶ 26, 48.) On average, each Class Member will receive approximately a payment of $590.42. (Kruckenberg Decl. ¶ 11.) The highest individual settlement payment to be paid will be approximately $1,099.49. *Id.* Any remaining monies from uncashed checks will be paid to Legal Aid at Work, as the designated *cy pres* beneficiary. (Settlement Agreement ¶ 52.)

### C. Notice and Administration

On September 13, 2021, Phoenix Settlement Administrators ("PSA") mailed the class notice to the class of 1,473 individuals utilizing the data provided by Defendants. (Kruckenberg Decl. ¶¶ 3, 5.) Of those, 50 notices were returned with an invalid address. (Kruckenberg Decl. ¶ 6.) Out of these, 3 were mailed to a forwarding address and 34 were mailed to updated addresses after performing a skip-trace. *Id*. As of the date of the filing of this motion, 13 Notice Packets are considered undeliverable, because an updated address could not be obtained. *Id.* at ¶ 7.

The deadline for Class Members to submit their requests for exclusion ("opt-outs") was October 28, 2021. (Kruckenberg Decl. ¶ 8.) Of the 1,460 delivered notices, only two opt-outs were received by the response deadline. *Id.* No objections were submitted or filed, and there are

1 no outstanding disputes. *Id.* at ¶¶ 9-10.

### D. CAFA Notice

Pursuant to the Class Action Fairness Act of 2005 ("CAFA"), Defendants sent notices of the proposed settlement on November 17, 2021, via certified mail to certain government officials in the States of California, Pennsylvania, Washington, Nevada, Indiana, Tennessee, Alabama, Louisiana, Montana, Utah, Oregon, Minnesota, Texas, and New Mexico as well as to the U.S. Attorney General as required by CAFA. (Dkt. No. 50 at 2.) CAFA's 90-day notice period expired on February 15, 2022. *See id.*

## II. LEGAL STANDARD

In deciding whether a settlement agreement is fair, adequate, and reasonable to all concerned, the Court considers the following factors:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

The Ninth Circuit also counsels that while "strong judicial policy favors settlements, the settlement may not be the product of collusion among the negotiating parties." *Churchill Vill., LLC*, 361 F.3d at 576 (internal quotation and modification omitted). Further, when a settlement agreement is negotiated prior to formal class certification, the court must be particularly vigilant for signs of collusion, as "there is an even greater potential for a breach of fiduciary duty owed the class during settlement." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). Such signs include: (1) counsel receiving a disproportionate distribution of the settlement, or where a class receives no monetary distribution, but class counsel is amply rewarded; (2) where the parties negotiate a "clear sailing" arrangement for the payment of attorney's fees separate and apart from class funds; and (3) where there is a reversion of fees to the defendant. *Id.* at 947.

///

///

4

## III. DISCUSSION

### A. Final Approval

The Court finds that the *Churchill* factors support final approval of the Settlement.

First, Plaintiff's case presented several risks. For example, Plaintiff ran the risk of not certifying the class because she was only employed by one of the defendant entities, which does not guarantee that the class would be certified given the alter ego issue. (Pl.'s Mot. at 13; *see also* Pl.'s Mot. for Preliminary Approval, Dkt. No. 42 at 21.) Also, there is the high likelihood of appeal even if she prevailed at trial. (Pl.'s Mot. for Preliminary Approval at 20-21.) Thus, the Court finds that the first *Churchill* factor favors final approval.

Second, in the absence of settlement, this case would likely be subject to significant further litigation. Plaintiff would still have to seek class certification, and disputes exist as to the merits of the case. The Court concludes that the second *Churchill* factor favors final approval.

Third, as discussed above, Plaintiff faced a risk that they would not be able to obtain and maintain class certification. (Pl.'s Mot. at 13.) Plaintiff would have the burden of showing that the defendants were all alter egos, and there is no guarantee that she would have been able to pierce the corporate veil. (Dkt. No. 30 at 4.) Furthermore, some putative class members are subject to collective bargaining agreements that contain arbitration clauses, and, once certified, those class members would have likely been sent to arbitration. *See id.* at 5-6. This factor favors final approval.

Fourth, the amount offered by the Settlement is acceptable, as the Gross Settlement Amount represents 24% of the value of the Labor Code § 226(a) penalties. As discussed above, the discount is justified by the risks faced by Plaintiff in prevailing on the merits on behalf of the class. The Court finds that this factor favors final approval.

Fifth, it appears Plaintiff has engaged in sufficient investigation in this case. Class Counsel has interviewed Plaintiff, reviewed documents provided by Plaintiff and Defendants, engaged in motion practice, analyzed the legal positions taken by Defendants, exchanged information through discovery, and performed a damages analysis. (Lee Decl. ¶¶ 3-4.) Prior to the mediation, Defendant provided employment and payroll information, allowing Plaintiff to

1  calculate the value of the case. *See ids.* This allowed Class Counsel to evaluate the claims on a
2  class-wide basis. The Court concludes that the discovery conducted was adequate to allow the
3  parties to make a fully informed decision on settlement. Thus, this factor favors final approval.

4  Sixth, Class Counsel attests that the settlement is fair and reasonable. (Lee Decl. ¶ 5; Decl.
5  of Max W. Gavron, "Gavron Decl.," Dkt. No. 48-2 ¶ 2; Decl. of William L. Marder, "Marder
6  Decl.," Dkt. No. 48-3 ¶ 4.) Further, Class Counsel is experienced in this area; the primary
7  attorneys in this case have significant experience in employment matters. (Lee Decl. ¶¶ 9-13;
8  Gavron Decl. ¶¶ 3-8; Marder Decl. ¶¶ 7-14.) Class Counsel's experience and support for the
9  Settlement favors final approval.

10  Seventh, notice of the settlement was provided to the LWDA, as well as the Class Action
11  Fairness Act ("CAFA") notice to all applicable state officials. At the hearing, the parties informed
12  the Court that no government entity has lodged an objection to the settlement. The Court finds
13  that this *Churchill* factor favors final approval.

14  Finally, the reaction of the class members to the proposed settlement has been positive.
15  Per the settlement administrator, the class list included 1,473 individuals. (Kruckenberg Decl. ¶ 3,
16  5.) Only 13 notices were deemed undeliverable, as no current address was found even after skip
17  tracing was performed. *Id.* at ¶¶ 6-7. No objections were filed with the Court, and only two opt-
18  outs were received. *Id.* at ¶¶ 8-9. As only two class members have opted out and no individuals
19  have objected to the Settlement terms, this last *Churchill* factor favors final approval.

20  Overall, the *Churchill* factors favor approval of the settlement. Additionally, the Court
21  finds that the *Bluetooth* factors are satisfied, such that there is no evidence of collusion.
22  Specifically, Class Counsel is not receiving a disproportionate distribution of the settlement, there
23  is no "clear sailing" arrangement, and none of the Settlement Amount reverts back to Defendants.

24  Thus, having reviewed both the *Churchill* and *Bluetooth* factors, the Court finds that the
25  Settlement is fair, adequate, and reasonable. Accordingly, the Court GRANTS Plaintiff's motion
26  for final approval.[1]

---

[1] The parties have also selected the Legal Aid at Work as the *cy pres* beneficiary. (Pl.'s Mot. at 12.) The Court finds that the Legal Aid at Work is an appropriate *cy pres* beneficiary.

### B. Sufficiency of Notice and Administrator's Costs

PSA provided notice to the members of the class in the form that the Court approved previously. The notice met the legal prerequisites: it was the best notice practicable, satisfied the notice requirements of Rule 23, adequately advised class members of their rights under the settlement agreement, met the requirements of due process, and complied with the Court's order regarding court notice. The form of notice fairly, plainly, accurately, and reasonably provided class members with all required information, including (among other things): (1) a summary of the lawsuit and claims asserted; (2) a clear definition of the class; (3) a description of the material terms of the settlement, including the estimated payment; (4) a disclosure of the release of the claims; (5) an explanation of class members' opt-out rights, a date by which they must opt out, and information about how to do so; (6) the date and location of the final fairness hearing; and (7) the identity of class counsel and the provisions for attorney's fees and costs.

Thus, the Court approves PSA's costs of $12,500, which will be paid out of the Class Settlement Amount. (*See* Kruckenberg Decl. ¶ 13.)[2]

### C. Attorneys' Fees

"[T]he court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).  The Ninth Circuit has found, however, that courts still "have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth*, 654 F.3d at 941.  Where a settlement, such as this one, "produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." *Id.* at 942.  Under the percentage method, "courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award . . . ." *Id.* Court may diverge from the benchmark based on factors that include "the results obtained, risk undertaken by counsel, complexity of the issues, length of the professional relationship, the market rate, and awards in similar cases." *Morales v. Stevco*, Inc., No. CIV-F-09-0704-AWI-JLT, 2013 WL

---

[2] The undersigned notes that this is less than the amount actually incurred, which was $12,776.20. (Kruckenberg Decl., Ex. B.)

1222058, at *2 (E.D. Cal. Mar. 25, 2013); *Morris v. Lifescan, Inc.*, 54 F. App'x 663, 664 (9th Cir. 2003) (affirming 33% fee award); *In re Pac. Enter. Secs. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995).

Here, Class Counsel seeks 33.3% of the common fund, or $482,333.33. (Pl.'s Mot. at 2, 18-21.) If the court applies the percentage method, then it typically calculates the lodestar as a "crosscheck to assess the reasonableness of the percentage award." *See*, *e.g.*, *Weeks v. Kellogg Co.*, No. CV-09-8102-MMM-RZx, 2013 WL 6531177, at *25 (C.D. Cal. Nov. 23, 2013); *see also Serrano v. Priest*, 20 Cal. 3d 25, 48–49 (1977); *Fed-Mart Corp. v. Pell Enters.*, *Inc.*, 111 Cal. App. 3d 215, 226–27 (1980). "The lodestar . . . is produced by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate." *Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19, 26 (2000). Once the court has fixed the lodestar, it may increase or decrease that amount by applying a positive or negative "multiplier to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented." *Id.*; *accord Laffitte v. Robart Half Internet, Inc.*, 1 Cal. 5th 480, 503–06 (2016) (under California law, "the percentage method to calculate [attorney's] fees in a common fund case" is appropriate and the trial court has "discretion to conduct a lodestar cross-check on a percentage fee").

Based on counsel's submissions, the fee award is appropriate as a percentage of the common fund and is supported by a lodestar cross-check, given the results obtained, the case itself, the lack of objections to the settlement, and counsel's litigating the case on a contingency basis. *Cf. e.g., Bellinghausen*, 306 F.R.D. at 259–65 (N.D. Cal. Mar. 20, 2015) (approving attorney's fees equal to the benchmark 25 percent of the common fund); *Burden v. SelectQuote Ins. Servs.*, No. C 10-5966-LB, 2013 WL 3988771, at *4–5 (N.D. Cal. Aug. 2, 2013) (awarding 33 percent of the settlement fund as attorney's fees "given the extensive litigation in the case[,] [] the successful results achieved[,]" and the contingency risk); *Villalpando v. Excel Direct Inc.*, Nos. 12-cv-04137-JCS, 13-cv-03091-JCS, 2016 WL 7740854, at *2 (N.D. Cal. Dec. 12, 2016) (awarded one-third of the settlement fund as reasonable attorney's fees because of "the contingent risk, [c]ounsel's documented lodestar, the complex and protracted nature of the case, and strong result for the case").

1    As to the lodestar cross-check, the billing rates are normal and customary (and thus reasonable) for lawyers of comparable experience doing similar work.³ *Cuviello v. Feld Entm't, Inc.*, No. 13-cv-04951-BLF, 2015 WL 154197, at *2–3 (N.D. Cal. Jan. 12, 2015) ("court has broad discretion in setting the reasonable hourly rates used in the lodestar calculation"); *Ketchum v. Moses,* 24 Cal. 4th 1122, 1132 (2001) (court can rely on its own experience); *accord Open Source Sec. v. Perens*, 803 F. App'x 73, 77 (9th Cir. 2020).  Counsel provided billing records justifying the hours worked in the case and allowing a conclusion about a multiplier of 1.27, which falls within the range of multipliers that courts approve. *Vizcaino*, 290 F.3d at 1051 n.6 ("Multiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied").

Thus, applying the percentage method, as cross-checked by the lodestar method, the Court finds that the attorney's fees sought by Class Counsel is reasonable.  The Court, therefore, GRANTS Plaintiff's request for an award of attorney's fees in the amount of $482,333.33.

### D.    Attorneys' Costs

Plaintiff seeks $10,402.15 in costs, which is less than the $20,000 allotted in the Settlement Agreement.  (Pl.'s Mot. at 26; Costs, Lee Decl. ¶ 18, Ex. B.)  Defendant does not oppose Class Counsel's request.  The Court finds that the costs requested were reasonably incurred, and GRANTS Plaintiff's request for costs in the amount of $10,402.15.

## IV.    CONCLUSION

For the reasons set forth above, Plaintiff's motion for final approval of the class action settlement is GRANTED, and the Court (1) certifies the classes for settlement purposes only, (2) approves the settlement and authorizes the distribution of funds set forth above, (3) confirms the appointments of the class representative, class counsel, and Phoenix Settlement Administrators, (4) approves $482,333.33 in attorney's fees, $10,402.15 in costs, $12,500 for Phoenix Settlement Administrators' administration costs, and (5) orders the parties and Phoenix Settlement Administrators to carry out their obligations in the settlement agreement.

---

³ Lee Decl. ¶¶ 14-16, Ex. A; Gavron Decl. ¶¶ 10-12, Ex. A; Marder Decl. ¶¶ 15-17, Ex. A.

Finally, the Court retains jurisdiction of this action for the purposes of supervising the implementation, enforcement, construction, and interpretation of the Settlement Agreement, and distribution of the Class Settlement Amount.

The Clerk shall close the case.

IT IS SO ORDERED.

Dated: March 4, 2022

_____
KANDIS A. WESTMORE
United States Magistrate Judge